IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ELMER McBRIDE                                                                          PLAINTIFF

VS.                                      CASE NO. 12-CV-4064

TYSON FOODS, INC.                                                                    DEFENDANT

### MEMORANDUM OPINION

Before the Court is Defendant's Motion for Summary Judgment. (ECF No. 16). Plaintiff has filed a response (ECF No. 22), and Defendant has filed a reply. (ECF No 25). The Court finds this matte ripe for consideration. For the reasons explained below, Defendant's motion is granted.

### BACKGROUND

This action involves alleged interference and retaliation under the Family and Medical Leave Act ("FMLA") and alleged retaliation for filing a Workers' Compensation claim. Plaintiff Elmer McBride is a former employee of Defendant Tyson Foods, Inc. ("Tyson"). Each of his claims arises from an on-the-job hand injury that he sustained in July 2011.

In March 2010, McBride was hired by Tyson and assigned to the maintenance department at Tyson's plant. On July 29, 2011, McBride's hand was pulled into a box taper machine while he was attempting to repair a belt that had untracked on the machine. This resulted in the palm of McBride's hand being cut. He was subsequently taken to the emergency room. After McBride returned to the plant from the emergency room, he was given a notification of disciplinary action which stated:

> Elmer McBride was working on #8 box taper trying to get the belt back on track. Tape machine was still plugged in while Elmer was working on it. All equipment is to be locked out, tagged out, or disconnected from the power source. This is a violation of the Core Safety Mandate Policy.

(ECF No. 16, Exh. 11). The notification of disciplinary action further stated that McBride was being "suspending pending an investigation into the incident. He is to return to [Tyson] HR Wednesday 8/3/11 at 4:15 p.m."

McBride's suspension was effectively immediately. During his three-day suspension, Tyson conducted a review of the incident that led to McBride's injury. Tyson concluded that McBride did not disconnect the equipment from the power source before he attempted to unhang the belt on the box taper. Tyson also found that McBride had been trained on Tyson's safety mandates, and, therefore, knew that Tyson's protocol required him to "lockout"; "tagout"; or disconnect a machine from its power source before attempting a repair of this kind. (ECF No. 16, Exhs. 2-6). Tyson determined that McBride's intentional disregard of known safety protocols warranted termination. Tyson communicated its findings to McBride when he returned to the plant from his three-day suspension on August 3, 2011. McBride was formally terminated that same day.

In September 2011, McBride filed a claim for benefits with the Arkansas Worker's Compensation Commission. In November 2011, McBride settled his workers' compensation claim against Tyson for $3,500; payment of all authorized medical expenses incurred before October 27, 2011; and $875 in attorney's fees.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a

2

matter of law." Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir. 1995). This is a "threshold inquiry of…whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

McBride asserts that Defendant interfered with his FMLA rights and retaliated against him for exercising those rights.  He also alleges that Defendant committed a "felony tort" by interfering with his rights under Arkansas's Worker's Compensation Law, Ark. Code Ann. § 11-9-101.  The Court will discuss each of these claims in turn.

### I. FMLA Interference and Retaliation

There are two types of claims under the FMLA: "(1) 'interference'…claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) 'retaliation'…claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008). McBride asserts both in his Complaint.

#### *a. Interference*

While McBride alleges FMLA interference in his Complaint, he appears to have abandoned that claim by not responding to the interference arguments contained in Defendant's Motion for Summary Judgment.[1] Setting aside this apparent abandonment, McBride's interference claim fails on its merits.

A claim for FMLA interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It also includes manipulation by a covered employer to avoid responsibilities under FMLA." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 C.F.R. § 825.220(b)). In order to state a claim for interference under the FMLA, McBride must have given notice to Tyson of his need for FMLA leave. *Id*. "This ordinarily means at least verbal notification to the employer….However, an employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work." *Id.* (internal citations and quotations omitted).

Plaintiff admits that he did not request FMLA leave on the day of his injury or during his suspension. The three days that he was absent from work following his injury constituted a mandatory suspension period—not FMLA leave or company sick leave. Because McBride never

---

[1] Plaintiff mentions interference in the opening paragraph of his response, but he cites no specific law in support of an interference claim. Furthermore, the only subsection contained in his brief is entitled "Plaintiff's prima facie case on the retaliation claim."

requested FMLA leave and because he was never on FMLA leave following his work injury, the Court finds that his FMLA rights were not interfered with. Accordingly, summary judgment in favor of Defendant is appropriate as to McBride's FMLA interference claim.

### b. *Retaliation*

FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. McBride must first establish a prima facie case, which requires him to "show that [he] exercised rights afforded by the Act, that [he] suffered an adverse employment action, and that there was a causal connection between [his] exercise of rights and the adverse employment action." *Phillips*, 547 F.3d at 912. If McBride is able to do so, then the burden shifts to Defendant "to come forward with evidence of a legitimate, nondiscriminatory reason for the adverse action." *Id*. If Defendant does so, McBride "must come forward with evidence that creates an issue of fact as to whether the asserted reason was pretext for discrimination." *Id*.

McBride's FMLA retaliation claim is somewhat difficult to decipher. McBride acknowledges that he did not request FMLA leave subsequent to his injury. He also acknowledges that the three-day period he was absent from work constituted a disciplinary suspension. Nonetheless, McBride argues that he was retaliated against because Defendant terminated him "after it became clear he had a FMLA qualifying condition." (ECF No. 24, p. 8). In other words, McBride appears to argue that, even though he never requested FMLA leave, Defendant terminated him because it knew that McBride's injury would require FMLA leave if he was retained.

1. McBride's *prima facie* case of retaliation

It is undisputed that McBride suffered an adverse employment action. The remaining issues are whether McBride actually engaged in protected conduct by exercising his FMLA rights and whether there is a causal connection between that exercise and his termination.

Defendant maintains that because McBride never requested FMLA leave for his injury—and never had the need to do so because of his suspension—he did not engage in protected activity. McBride does not directly respond to this point. He merely references the FMLA being "implicated" and states that he had an "FMLA qualifying condition." Plaintiff appears to argue that he exercised his FMLA rights simply by going to the emergency room on the day of the accident. The Court is not convinced that this amounts to an exercise of McBride's FMLA rights. Simply seeing a doctor for an injury does not implicitly qualify as FMLA leave or notify the employer that FMLA leave will be required at a future date. Because the Court finds that McBride did not engage in protect activity, McBride is also unable to show the third element required for a *prima facie* case—a causal connection between protected activity and his termination.

2. Pre-text

Even if McBride was able to establish a *prima facie* case of retaliation, his claim would fail at the pre-text stage. McBride must show that Defendant's justification for termination is unworthy of credence and has no basis in fact. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833-834 (8th Cir. 2002); *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir.2005).

Defendant has offered extensive evidence showing that McBride violated safety policy that required him to power-down a machine before attempting to repair a belt; that McBride was trained on this safety policy; and that company policy clearly provided for termination under

these specific circumstances. Accordingly, Defendant has set forth a legitimate, non-discriminatory reason for McBride's firing.

McBride admits that Tyson policy required employees to "lockout"; "tagout"; or disconnect a machine from its power source before attempting a repair. McBride acknowledges that he did not do these things. Nevertheless, he attempts to show pre-text by claiming that he was not trained on how to "lockout" machines.[2] McBride points out that Defendant's policy is to not terminate employees who violate safety policies that they have not been trained on. Accordingly, he argues that Defendant knew he had not been trained on lockout techniques and lied about his training so that his termination would be justified.

Defendant has offered many exhibits showing that McBride acknowledged on multiple occasions that he had been trained on lockout policies. (ECF No. 16, Exh. 8, p. 11-12). In fact, just a month prior to the accident, McBride signed a document entitled "Core Safety Mandate Sign Off" certifying that the lockout policies had been explained to him. He also signed a similar document entitled "Lockout/Tagout Training Checklist" certifying that he had been trained on the specifics of lockout/tagout policy. (ECF No 16, Exh. 3). Finally, he signed a document entitled "Training Verification Form" which certified that that he had been trained on all of Defendant's general safety rules. (ECF No. 16, Exh. 5).

McBride admits that he signed all of the above-referenced documents. Despite his signature on the documents, he claims that he was not adequately trained on lockout techniques. As evidence of this lack of training, McBride cites to statements made in his deposition. When asked if he was trained on lockout procedures, McBride replied that he was not. (ECF No. 22, Exh. 1, p. 28). However, in that same deposition, he acknowledged that he knew what the

---

[2] Locking out machines consists of powering down the machine and locking it so that it cannot be turned back on while maintenance is being performed.

lockout procedure entailed; that he might have been trained on every safety policy referenced in the training certification documents but just might not remember; that he passed a test that required him to demonstrate proper lockout of three pieces of equipment; and that he is not claiming in this lawsuit that he was never trained on lockout procedures. (ECF No. 22, Exh 1, p. 28-33, 37-40, 83-87).

The undisputed evidence, and McBride's own statements, show that he was trained on safety policies requiring him to cut off power to machines and lockout the machines before attempting to repair them.[3] Given this overwhelming evidence of McBride's training, it would not be reasonable to conclude that Defendant somehow fabricated its findings that McBride had been properly trained in order to justify his termination. In other words, McBride has failed to show that Defendant's conclusion about his training and its reason for his termination had no basis in fact.[4]

Because McBride has failed to establish a *prima facie* case and has failed to show pre-text, summary judgment in favor of Defendant is appropriate as to McBride's retaliation claim.

### II. Worker's compensation felony tort claim

McBride claims Defendant committed a "felony tort" by retaliating against him for filing a worker's compensation claim in violation of Ark. Code Ann. § 11-9-101, *et seq*. Defendant points out that the Arkansas Supreme Court recently held that a felony tort claim cannot be based on a retaliation claim under Ark. Code Ann. § 11-9-107. *Lambert v. LQ Mgmt., L.L.C.*, 2013 Ark. App. 114 (March 14, 2013).

---

[3] There is some dispute over whether the machine in this case was even capable of being locked out. However, there is no dispute that the power was capable of being disconnected. Disconnecting the power is the first step in lockout procedures, and McBride admittedly did not take this step before placing his hand on the machine.
[4] Even if McBride's training was lacking, he has offered no evidence to suggest that the individuals making the termination decision were aware of this lack of training. The decision-makers reviewed documents signed by McBride and relied on these representations when determining that he had been trained. This reliance on McBride's signature on these documents was not misplaced under these circumstances.

McBride has offered no response to Defendant's motion on this claim. Accordingly, the Court will assume that the claim has been abandoned.

## CONCLUSION

For the reasons explained above, the Court finds that Defendant's motion for summary judgment (ECF No. 16) should be and hereby is **GRANTED**. A Judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 23rd day of May, 2013.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge